UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TARA P.,[1]

                            Plaintiff,

     v.                                                         8:23-CV-448 (MJK)

MARTIN J. O'MALLEY,

                            Defendant.
_____

MARK A. SCHNEIDER, ESQ., for Plaintiff
KRISTINA COHN, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

**MEMORANDUM-DECISION and ORDER**

      Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 5). Both parties filed briefs (Dkt. Nos. 17, 19, 27), which the court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

1

I.      **<u>PROCEDURAL HISTORY</u>**

On November 5, 2020, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning June 19, 2019. (Administrative Transcript[2] ("T.") 16, 231-37). Plaintiff's application was denied initially on March 17, 2021 (T. 16, 63-83), and upon reconsideration on June 8, 2021 (T. 16, 106, 123-134). On November 3 and 10, 2021, Administrative Law Judge ("ALJ") Dale Black-Pennington conducted a hearing during which plaintiff and Margaret Heck, an impartial vocational expert, testified, respectively. (T. 31-45, 1178-1210[3]). On December 21, 2021, the ALJ issued a decision denying plaintiff's claim. (T. 13-30).

Plaintiff appealed the ALJ's decision to the Appeals Council on December 22, 2021.  (T. 226-27).  On September 8, 2022, while the request for appeal was still pending, plaintiff submitted to the Appeals Council a 17-page neuropsychological assessment, dated August 3, 2022, prepared by Taher Zandi, Ph.D., a neuropsychologist and professor of psychology at State University of New York at Plattsburgh, New York. (T. 46-62).

The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 30, 2023. (T. 1-7).

---

[2] The Commissioner initially filed the administrative transcript in this case on July 7, 2023.  (Dkt. No. 8).  At the court's request, the Commissioner filed an Amended Administrative Transcript on January 19, 2024, to remedy various bookmarking and indexing deficiencies contained therein. (Dkt. Nos. 23, 25).  No substantive changes were made in the course of refiling the administrative transcript, and the amended transcript should otherwise be an exact replica of the transcript as it was previously filed. (*Compare* Dkt. No. 8 *with* Dkt. No. 25).

[3]The transcript of the 11/3/21 administrative hearing was filed separately on the docket.  (*See* Dkt. No. 14).

## II. GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past

work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial

support for the ALJ's decision. *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff testified on November 3, 2021.  As of the hearing date, she was 30 years old, 5'2" tall and weighed 210 pounds. (T. 1186).  Plaintiff has a bachelor's degree in early childhood education. (T. 1189).

Plaintiff was in a car accident in 2019 when her vehicle collided with a cement truck (T. 1201), in which she seriously injured her left knee. Medical records report that plaintiff sustained multiple fractures to her pelvis/lower extremity.  (T. 376).  She was told that her knee could not be fixed and that she should apply for disability. (T. 1192).

Plaintiff testified that she also suffered a concussion as a result of the 2019 car accident.  (T. 1201).  Medical records indicate that she suffered a "left occipital condyle nondisplaced fracture."  (T. 389).  She experienced headaches before the accident, but testified that they became worse after the event. (T. 1201-02). Since the collision, she experienced "bad" migraines.  (*Id.*). The migraines continued to get worse. (T. 1186).

5

She testified that, recently, the migraines caused her not to eat, and as a result she lost approximately 15 pounds. (*Id.*).  Botox injections helped the migraines, but only for a period of about one week. (T. 1187).  The combination of plaintiff's knee pain and instability, in addition to her migraines, made it difficult to function. (T. 1193).

She has a driver's license but testified that she does not drive much due to her migraines. (*Id.*). She testified that she is not great at math and takes a long time to do math. (T. 1190).  She is able to read (and did so all the time prior to the car accident (T. 1207)), but doesn't normally do so because of the migraines. (T. 1189).  Plaintiff referred to "processing" limitations that she experiences.  (T. 1196).

In addition to the aforementioned conditions, plaintiff testified to having diabetes, which she treated with insulin.  She also suffered from anxiety and depression. She treated with a psychiatrist and a counselor, as well as with medication, for the anxiety and migraines. (T. 1193).

## IV. THE ALJ'S DECISION

The ALJ first determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since her application date of November 5, 2020.  (T. 18).  Next, the ALJ found that plaintiff had the following severe impairments: status-post motor vehicle accident and fracture to left distal femur and ORIF, a back disorder, obesity, diabetes mellitus, and chronic headaches: neck disorder. (*Id.*).  At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 20).

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she can stand/walk for four out of eight hours in 30 minute intervals, and sit for six out of eight hours in one-hour intervals. (T. 20). The ALJ further limited plaintiff to occasionally climbing ramps or stairs, stooping, kneeling, crouching and crawling. (*Id.*). Plaintiff can frequently balance. (*Id.*). Last, the ALJ limited plaintiff to a moderate-to-quiet work environment, and avoiding concentrated exposure to bright lights. (*Id.*).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (T. 21). The ALJ further noted that he fully considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.*).

The ALJ next found that plaintiff was unable to perform any past relevant work. (T. 24-25). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 25-26). Thus, the ALJ found that plaintiff was not disabled. (T. 38).

7

## V.  ISSUES IN CONTENTION

Plaintiff raises a host of challenges to the Commissioner's final decision denying her application for benefits, including the ALJ's failure to properly evaluate the medical evidence of record, failure to properly consider the limitations posed by plaintiff's mental impairments in the RFC, and failure to credit plaintiff's testimony as to her limitations.  (Plaintiff's Brief ("Pl.'s Br.") at 18-33) (Dkt. No. 17).  Plaintiff also argues that the Appeals Council erred by not considering and evaluating Dr. Zandi's August 3, 2022 neuropsychological evaluation.  (Pl.'s Br. at 25-28).  For the following reasons, this court agrees that the Appeals Council improperly denied plaintiff's request for review when it categorically refused to consider Dr. Zandi's opinion because it post-dated the ALJ's hearing decision.  Accordingly, remand to the Appeals Council for reconsideration in light of the new evidence is warranted.

## DISCUSSION

## VI.  APPEALS COUNCIL REVIEW

A claimant is expressly authorized to submit new and material evidence to the Appeals Council. *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).  Under the Commissioner's regulations, the Appeals Council will review a case based on additional evidence if, in addition to meeting other requirements, the evidence relates to the period on or before the date of the hearing decision and there is a reasonable probability that it would change the outcome of the decision. 20 C.F.R. § 416.1470(a)(5).  If the new evidence relates to the time period before the ALJ's decision, the Appeals Council " 'shall evaluate the entire record,

8

including the new and material evidence submitted… [and] then review the case if it finds that the administrative law judge's action, findings, or conclusions are contrary to the weight of the evidence currently of record.' " *Blash v. Comm'r of SSA*, 813 F. App'x 642, 645 (2d Cir. 2020) (quoting 20 C.F.R. § 404.970(b)).

In the Second Circuit, the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez*, 77 F.3d 41, 45 (2d Cir. 1996). "The court reviews 'the entire administrative record' (including the new evidence) to determine whether 'there is substantial evidence to support the decision of the Secretary.' " *Wells v. Comm'r of Soc. Sec.*, No. 1:20-CV-10332, 2022 WL 1302187, at *8 (S.D.N.Y. May 2, 2022) (citing inter alia *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015)).

The relevant period for the instant case was from November 5, 2020, Plaintiff's SSI application date, through December 21, 2021, the date of the ALJ's decision. Dr. Zandi's report, which was dated August 3, 2022, post-dated the relevant period by eight months. (T. 46-62). The Appeals Council denied the plaintiff's request for review, acknowledging receipt of Dr. Zandi's report dated August 3, 2022 and stating:

> the [ALJ] decided your case through December 21, 2021. The additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before December 21, 2021.

(T. 2).

9

The Appeals Council summarily declined to review the ALJ's decision because the evidence submitted post-dated the ALJ's decision, thus it viewed the opinion as immaterial. While the Zandi report does not contain a specific statement as to its relevance to the period under review, Dr. Zandi did provide "clues" with respect to the context within which his opinion should be considered. Dr Zandi specifically noted plaintiff's report that "she was involved in a motor vehicle accident three years ago." (T.47). He continues, based on plaintiff's report, to acknowledge that "[e]ver since the automobile accident, Tara has struggled with persistent migraine headaches that she struggles with most of the day." (*Id.*).

Of further significance to this appeal, Dr. Zandi concluded, after analyzing the results of the various neuro-behavioral evaluations he administered, that

> Tara's cognitive abilities prior to her car accident must have been higher than her current scores since she was able to get an undergraduate degree online, learned to deal with children and held a job working with kids that requires multitasking skills. However, most of the skills are no longer present. Additionally, her persistent headaches have affected her mobility and overall cognitive status.
>
> Tara has difficulty maintaining a job that requires the tasks listed in this assessment.

(T. 62).

The final "clue" in the Zandi report with regard to its relevance to the period at issue is his suggestion that Tara "needs to enroll with the "PSUC TBI" center to obtain

some form of assistance. (T.62). It appears that the abbreviation stands for the Plattsburgh State University College Traumatic Brain Injury Center.[4]

In *Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 n. 1 (2d Cir. 1998), the Second Circuit noted that material evidence is that which is relevant to the time period for which benefits were denied, even if made after that time. "In other words, the new test results were found to be material because they not only shed light on the claimant's current health, but also provided an explanation for her health problems in the time period for which benefits were denied." *Id.* The courts in this Circuit have continued to recognize that an opinion issued after an ALJ has issued his decision may relate to the relevant time period, where, as is the case here, it evidences some relation to the plaintiff's condition during the relevant period at issue. *See Kaliegh O. v. Comm'r of Soc. Sec.,* No. 5:19-CV-940 (TWD), 2020 WL 5751171, at *4 n. 4 (N.D.N.Y. Sept. 25, 2020)(discussing that report concerning plaintiff's IQ, generated after relevant period of disability, might nevertheless be considered because "case law assume[s] that an IQ is static after a person's twenty-second birthday."); *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 n. 2 (D. Conn. Apr. 1, 2019) (noting that, although the treating physician's opinion was dated after the ALJ's decision, it relied on notes composed during the relevant time period, and ordered that to "the extent that the findings and conclusions discussed in [the treating physician's] letter can be attributed to his observations during the time period at issue, that letter is new and material evidence and should be addressed on remand"); *Flagg v. Colvin*, No. 5:12-CV-0644 (GTS/VEB), 2013 WL

---

[4] *See* https://www.plattsburgh.edu/about/centers/cnbh/tbi.html (last visited 3/19/24).

4504454, at *5 (N.D.N.Y. Aug. 22, 2013) (rejecting the argument that the Appeals Council may properly dismiss a physician's opinion solely because it was completed after the date of the ALJ's decision); *Amanda L.C. v. Comm'r of Soc. Sec.*, No. 3:19-CV-817 (GTS), 2020 WL 4783169, at *6-8 (N.D.N.Y. Aug. 18, 2020) (Appeals Council erred in finding doctor's opinion was not related to the relevant time period merely because it was rendered after the ALJ's decision); *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (recognizing new evidence consisting of documents generated after the ALJ rendered his decision can have a bearing on the Commissioner's evaluation of claims).

As set forth above, and notwithstanding the date of Dr. Zandi's evaluation, the contents of his report indicate his opinion that plaintiff's limitations were caused by her 2019 motor vehicle accident, which occurred prior to the relevant period of alleged disability, and that he attributes his findings that event.  In fact, plaintiff alleges that her disability onset date and date of the motor vehicle accident are one and the same. Accordingly, the Appeals Council erred in denying plaintiff's request for review based on their cursory conclusion that Dr. Zandi's opinion did not relate to the period at issue.

Because it viewed the new evidence as not relating to the relevant time period, the Appeals Council did not review the ALJ's decision with the benefit of the new evidence or determine whether there is a reasonable probability that the new evidence would change the outcome of the ALJ's decision.  The new evidence from Dr. Zandi established that, based on the results of a battery of assessment tools, plaintiff's cognitive ability and processing abilities are in the "extremely low range," and that here

ability to sustain attention, concentrate, and exert mental control, as well as her general perceptual reasoning abilities, are in the borderline range.  (T. 47-62).  Dr. Zandi further reasoned that plaintiff's objectively confirmed abilities prior to the car accident – i.e. those necessary to obtain her degree and hold a job requiring multi-tasking – were no longer present based on the results of Dr. Zandi's testing.  (T. 62).

    The ALJ does not appear to have otherwise developed the record as to plaintiff's cognitive abilities and their impact on plaintiff's ability to perform substantial gainful employment.  This is notwithstanding the consultative examiner's observation that plaintiff could not perform basic math operations, and other deficits in her mental status examination, and his rather severe opinion that plaintiff's reported history of concussion "would not account for" the inconsistencies between plaintiff's deficient mental functioning and her reported educational background.[5]  (T. 861-62).  Furthermore, the ALJ's opinion that plaintiff had no more than mild limitations in any of the paragraph B criteria (T. 19-20) stands in stark contrast to Dr. Zandi's opinions.  Emergency records from plaintiff's car accident indicate that she suffered a fracture to the base of her skull and cervical spine as a result of the impact in 2019.  (T. 392-93).  Dr. Zandi's impression as a result of his testing is that, among other things, plaintiff has a "probable" TBI, post-concussion disorder, and mild cognitive impairment.  (T. 60).  On these facts, there is a reasonable probability that the ALJ may have reached a different determination regarding plaintiff's disability status upon evaluating Dr. Zandi's

---

[5] It is unclear to this court whether plaintiff completed her undergraduate degree program before the 2019 motor vehicle accident, or sometime after the accident.

opinion, as it "contradicted the ALJ's conclusion in important respects." *See Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015). Thus, the court remands the matter for further proceedings during which Dr. Zandi's report will be considered along with the entire evidentiary record. *See McIntire v. Astrue*, 809 F. Supp. 2d 13, 21 (D. Conn. 2010) ) (citing *Milano v. Apfel*, 98 F. Supp. 2d 209, 216 (D. Conn. 2000) ) ("If the Appeals Council fails to consider new and material evidence, 'the proper course for the reviewing court is to remand for reconsideration in light of the new evidence.' ").

In reaching the above conclusion, the court recognizes the Second Circuit's decision in *Barrere v. Saul*, 857 F. App'x 22 (2d Cir. 2021), but finds it distinguishable from the case at bar. In *Barrere,* the Court via summary order rejected plaintiff's argument that the Appeals Council and district court erred by rejecting new and material evidence, namely a Neuropsychological Evaluation prepared two months after the ALJ's determination, in which the evaluator concluded that plaintiff was "fully disabled." *Id.* at 25. The Court went on to address the evaluator's specific statement that she considered plaintiff disabled "at this time, meaning July 11, 2017 – two months after the ALJ's determination." (*Id.*). It further noted that plaintiff had failed to establish a reasonable probability that the report – "which was not based on any functional assessment of Barrere and which contained objective findings that supported the ALJ's determination" – would have changed the outcome of the ALJ's decision. (*Id.*).

In this case, Dr. Zandi's report does not explicitly limit his findings to the date of testing, but instead implies a strong correlation between plaintiff's 2019 car accident,

14

the injuries she sustained therein, and the limitations he has assessed. Moreover, Dr. Zandi's specific conclusions as to plaintiff's functional capacities for reasoning, concentration, mental control, processing, and more were based on the results of extensive testing – none of which clearly "supported the ALJ's determination." Accordingly, the decision by the Second Circuit in *Barrere* is inopposite to the facts presently before this court, and does not compel a similar outcome.

## VII. REMAINING ARGUMENTS

As set forth above, plaintiff has identified additional arguments why she contends the ALJ's decision was not supported by substantial evidence. However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the court declines to reach these issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report recommendation adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 17) be **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 19) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated:  March 21, 2024

Mitchell J. Katz
U.S. Magistrate Judge